UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

CLINTWOOD JOD, LLC, *et al.*[1]

DEBTORS

CASE NO. 26-60438

CHAPTER 11

JOINTLY ADMINISTERED

---

**DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER
(I) APPROVING BIDDING PROCEDURES AND NOTICES FOR THE SALE OF
SUBSTANTIALLY ALL DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS, (II) APPROVING BIDDING
PROCEDURES AND NOTICES FOR THE SALE, (III) AUTHORIZING DEBTORS
TO ENTER INTO STALKING HORSE APA, (IV) SCHEDULING AN AUCTION
AND SALE HEARING, AND (V) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS AND LEASES**

---

Clintwood JOD, LLC and JOD Mineral Properties, LLC, debtors and debtors in possession (collectively, the "Debtors"), by counsel, and pursuant to 11 U.S.C. § 105, 363, 364, 365, 503 and 507 and Fed. R. Bankr. P. 2002, 4001, 6004, 6006, 9007, 9008 and 9014, and KYEB LBR 6004-1, seek entry of an order: (i) approving bidding procedures and notices for the sale of substantially all of the Debtors' assets (the "Sale Assets") free and clear of all liens, claims, encumbrances, and other interests, (ii) authorizing the Debtors to enter into a Stalking Horse APA, (iii) scheduling an auction and sale hearing, and (iv) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases.  In support of this Motion, the Debtors state as follows:

**JURISDICTION AND VENUE**

1.      On March 22, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101,

---

[1] The Debtors in these chapter 11 cases are Clintwood JOD, LLC and JOD Mineral Properties, LLC.

*et seq.* (the "Bankruptcy Code"), and filed motions requesting joint administration of their bankruptcy cases under the lead case of Clintwood JOD, LLC, which request was granted on March 27, 2026 [ECF No. 61].

2.      Debtors are operating their businesses as debtors and debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      This Court has jurisdiction over these Chapter 11 cases under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

4.      Debtors are Delaware limited liability companies which maintain their principal place of business and business assets in Pike County, Kentucky. Accordingly, venue for these Chapter 11 cases is proper in this District under 28 U.S.C. § 1408 and 1409.

5.      An Unsecured Creditors' Committee was appointed in these cases on April 2, 2026 [ECF No. 94].

### BACKGROUND

6.      The Debtors were formed in 2019 to acquire and operate substantial coal mining assets, many of which were previously the subject of a prior case before this Court, Cambrian Coal. JOD Holdings, LLC (a non-debtor) is the sole member of Clintwood JOD, LLC and JOD Mineral Properties, LLC. Debtor Clintwood JOD, LLC operates both surface and underground mining on leasehold interests located in Pike County, Kentucky and in surrounding areas in Wise and Buchanan Counties, Virginia.

7.      A description of the Debtors and their business, and the facts and circumstances leading to the commencement of the Chapter 11 Cases are set forth in greater detail in the First Day Declaration, incorporated herein by reference [ECF No. 25].[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the First Day Declaration.

8.      The Debtors commenced these bankruptcy cases to implement a value-maximizing transaction through a sale of all or substantially all of the Debtors' assets as a going concern.  The Debtors' critical financial situation required them to seek immediate access to credit to enable the continuation of their estates for the benefit of all stakeholders until a going-concern sale of substantially all of the Debtors' assets could be completed. The Debtors had discussions and negotiations with multiple entities, including some of their secured lenders, for debtor-in-possession ("DIP") financing. Ultimately, the Debtors obtained approval of a DIP loan from Square Resources US, LLC [ECF No. 235]. However, the DIP Loan matures on June 26, 2026.

## RELIEF REQUESTED

9.      Pursuant to this Motion, the Debtors request the court enter an order substantially in the form tendered herewith (the "Sale Procedure Order") that (i) approves the Bidding Procedures and notices for the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests, (ii) authorizes the Debtors to enter into the Stalking Horse APA, (iii) schedules an Auction and Sale Hearing, and (iv) authorizes and approves the assumption and assignment of certain executory contracts and unexpired leases.

10.     Debtors propose to conduct the sale process and auction on the following timeline:

| | |
|---|---|
| **May 21, 2026** | Hearing to consider entry of the Bidding Procedures Order |
| **No later than five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to file Assumption and Assignment Notice |
| **5:00 p.m. (prevailing Eastern Time) on the date that is 14 days after filing of the Assumption and Assignment Notice** | Deadline to file Sale Objections and Contract Objections |
| **June 5, 2026** | Deadline to identify Stalking Horse bid (if any) |

| June 10, 2026 | Stalking Horse bid objection deadline |
|---|---|
| June 12, 2026 at 5:00 p.m. (prevailing Eastern Time)[3] | Bid Deadline (including proof of financial and regulatory ability) |
| On or before June 15, 2026, at a time to be determined | Auction, to be held virtually or at the offices of DelCotto Law Group PLLC, 200 North Upper Street, KY 40507 or |
| June 16, 2026 | Deadline for Notice of Prevailing Bid and Backup Bid |
| June 17, 2026 | Sale Objection deadline |
| On or before June 18, 2026, as determined by, and subject to the availability of, the Court | Proposed hearing to approve proposed Sale Transaction |
| June 30, 2026 | Outside Closing Date |

11.     The Debtors believe that conducting the sale process within the time periods set forth above and in accordance with the Bidding Procedures attached hereto as Exhibit 1, is reasonable under the circumstances and balances the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids with the Debtors' need to quickly and efficiently sell the Sale Assets while they have sufficient funding to do so.

12.     The Debtors have consulted with their investment banker and financial advisor with respect to the a) current coal market; b) potential purchasers of the Debtors' assets; and c) timing and scope of marketing efforts for the Debtors' assets and do not believe that an extended marketing period would reach additional potential purchasers.

13.     The proposed dates governing the Sale process are within the milestones set forth under the DIP Financing.  The Debtors' failure to adhere to these milestones is an Event of Default under the DIP Financing, which could cause the DIP Lender to exercise its rights and remedies thereunder and/or the Debtors to run out of the funding they need to preserve the Sale Assets.

---

[3] Subject to Debtors' limited extension right set forth in Paragraph 15 of the Bidding Procedures.

14.     Additionally, the Debtors' proposed sale timeline is designed to maximize value, while at the same time limit needless expenditures and the incurrence of administrative expenses, which may risk a liquidity shortfall that could frustrate their restructuring efforts.  Accordingly, the Debtors have determined that pursuing the sale process and Auction in the manner and with the procedures proposed in the Bidding Procedures is in the best interest of the Debtors' estates and their creditors.

### STALKING HORSE BID

15.     The Debtors seek authority to solicit one or more stalking horse bids for substantially all of the Debtors' assets in order to encourage potential purchasers who might otherwise refrain from participating in the sale process.  A stalking horse bid reflects conduction of due diligence and preliminary valuation of assets to potential purchasers and often establishes a floor for competing bids.  The Debtors intend to file any stalking horse bid they are willing to accept with the Court for ultimate approval, subject to the right of interested parties to object.

### ASSUMPTION AND ASSIGNMENT PROCEDURES

16.     In connection with any Sale Transaction, the Debtors propose to assume and assign to the Successful Bidder(s) certain assignable contracts and/or leases. The Assumption and Assignment Notice, attached hereto as Exhibit 3, includes assumption and assignment procedures that will, among other things, notify the counterparties of the potential assumption and assignment of their respective contracts, the Debtors' calculation of cure costs with respect thereto, and provide such counterparties with the right to raise objections pursuant to a fixed timeframe.

**BASIS FOR RELIEF**

A.     **The Bidding Procedures Are Appropriate and Are in the Best Interests of the Debtors and their Estates**

17.     Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  The paramount goal of any proposed sale of property of the debtor's estate is to maximize the value of the sale proceeds received by the estate.  *See In re Big Rivers Elec. Corp.*, 233 B.R. 726, 734 (Bankr. W.D. Ky. 1998) ("a Chapter 11 DIP owes a fiduciary duty to all of the creditors and other interest holders of its bankruptcy estate to maximize the value of the bankruptcy estate"); *In re Jillian's Entm't Holdings*, 327 B.R. 616, 618 (Bankr. W.D. Ky 2005) (in selling estate assets, the plan administrator should "maximize the return to the bankruptcy estate"); *In re Omegas Grp, Inc.*, 16 F.3d 1443, 1452 (6th Cir. 1994) ("the Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern"). Courts recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate.  *See In re JW Res., Inc.*, 536 B.R. 193 (Bankr. E.D. Ky. 2015) (approving break-up fee to encourage stalking horse bidder to sign an asset purchase agreement which would provide a substantial benefit to Debtors' estate); *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates.").

18.     The proposed Bidding Procedures are designed to facilitate a sale process in compliance with the Bankruptcy Rules and relevant case law by providing a method by which the Debtors will be able to maximize the value of the Sale Assets.  The Bidding Procedures will allow

the Debtors to conduct the Auction in a fair, controlled and transparent manner that will encourage participation by financially capable bidders that demonstrate the financial wherewithal to close a transaction, thereby increasing the likelihood that the Debtors will receive the greatest possible consideration for the applicable Sale Assets at the Auction.

19.     The Debtors submit that courts in this District and other districts routinely approve procedures substantially similar to the proposed Bidding Procedures and Sale process.  *See, e.g., In re Sears Holdings Corporation*, No. 18- 23538 (RDD), [Docket No. 816] (Bankr. S.D.N.Y. Nov. 19, 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP), [Docket No. 2351] (Bankr. E.D. Va. Mar. 23, 2018); *In re Gymboree,* No. 19-30258 [Docket No. 26] (Bankr. E.D. Va.  Del. Jan.17, 2019); *In re NRHH*, No. 15-51278 [Docket No. 221] (Bankr. E.D. Ky. 2015).  Accordingly, the Bidding Procedures should be approved as reasonable, appropriate, and in the best interests of the Debtors, their estates and all parties in interest.

**B.     Approval of the Sale is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code**

20.     Section 363 of the Bankruptcy Code provides that the debtor may, "after a notice and a hearing . . . use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363.  In turn, section 105(a) of the Bankruptcy Code provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

21.     While the Bankruptcy Code does not specify the appropriate standard for approving the sale of property under section 363, courts uniformly agree that the business judgment standard applies. *See*, *e.g.*, *In re Jillian's Entm't Holdings*, 327 B.R. 616, at  617 (noting the "Second Circuit established the leading authority for approving sales… the proper standard to use when considering a proposed motion to sell is the business judgment test" citing *Equity Sec. Holders v. Lionel Corp. (In re Lionel*), 722 F.2d 1063 (2nd Cir.1983)); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390

(6th Cir. 1986) ("[w]e adopt the Second Circuit's reasoning in *In re Lionel Corporation*…and conclude that a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *In re Manalapan Mining Co., Inc.* Case No. 13-61501, 2015 Bankr. LEXIS 2024, *7 (Bankr. E.D. Ky. 2015) ("trustee may convey assets outside the ordinary course of business if, in his business judgment, the transfer benefits the estate"). Courts applying the *Lionel* standard typically apply four factors in determining whether a section 363 sale is appropriate under the business judgment standard— namely, whether: (a) a sound business justification exists for the sale; (b) adequate and reasonable notice of the sale was provided to interested parties; (c) the sale will produce a fair and reasonable price for the property; and (d) the parties have acted in good faith. 722 F.2d at 1070 (setting forth the "sound business" purpose standard for the sale of the debtor's assets under section 363 of the Bankruptcy Code).

> **1. The Debtors Have Demonstrated a Sound Business Justification for the Sale of the Sale Assets**

22. A sound business justification exists where a sale of the debtor's assets are necessary to preserve the value of the debtors' estates. *See*, *e.g.*, *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 at 390 (finding a sound business purpose for the sale of a debtor radio station's assets due to the potential of the debtor ceasing operations and risking its FCC licenses); *In re Lionel Corp.*, 722 F.2d at 1071 (adopting a rule "requiring that a judge determining a § 363(b) application expressly find from the evidence presented before him . . . a good business reason to grant" the sale); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 210 (Bankr. S.D. Ohio 2008) ("Under the law of [the Sixth] Circuit the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'").

23.     Here, the Debtors were faced with severe liquidity constraints prior to the Petition Date and have only been able to continue as a going concern through these Chapter 11 Cases through the financing provided by DIP Financing.  The Debtors have determined that a sale of substantially all of the Debtors' assets will provide the maximum possible recovery to creditors of the Debtors and provide the best chance for the Debtors' business to continue as a going concern. Furthermore, the open and fair auction and sale process contemplated by the Bidding Procedures will ensure that the Debtors' estates receive the highest or otherwise best value available for the Sale Assets by allowing the market to determine the purchase price of the Sale Assets.

**2.     The Notice Procedures Are Appropriate and Comply with Bankruptcy Rule 2002**

24.     Bankruptcy Rule 2002(a) and (c) require the Debtors to notify creditors of the sale, including a disclosure of the time and place of any auction, the terms and conditions of the sale and the deadline for filing any objections.

25.     The Debtors submit that the notice procedures set forth in the Bidding Procedures attached hereto as Exhibit 1 comply with Bankruptcy Rule 2002 and are reasonably calculated to provide all creditors and known parties in interest with adequate and timely notice of a Sale Transaction, the Bidding Procedures, the Auction and the Sale Hearing.  Accordingly, the Debtors request that the Court approve the notice procedures as set forth herein and that no other further notice of the Bidding Procedures, the Auction and the Sale Hearing is necessary or required.

**3.     The Proposed Sale Will Yield a Fair and Reasonable Purchase Price**

26.     As set forth above, the Debtors believe that the proposed sale will yield a fair and reasonable price for the Sale Assets.  The Bidding Procedures were carefully designed to ensure that the Auction, if necessary, will yield the maximum value for the Debtors' stakeholders.  The Debtors have constructed the Bidding Procedures to encourage competitive bidding, while giving

the Debtors the opportunity to review and analyze all competitive bids only from Qualified

Bidders, who will have been vetted prior to the Auction.

> **4.      The Bidding Procedures Ensure a Good Faith Process and the Ultimate Purchaser of the Applicable Sale Assets Is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

27.      Section 363(m) of the Bankruptcy Code is designed to protect the sale of a debtor's

assets to a good faith purchaser.  Specifically, section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . .were stayed pending appeal.

11 U.S.C. § 363(m).

28.      While the Bankruptcy Code does not define good faith, "[g]ood faith is an implicit

requirement for Chapter 11 relief." *In re Smith*, 58 B.R. 448, 450 (Bankr. W.D. Ky. 1986).   In

the Chapter 11 context, "[g]ood faith…presupposes some element of self-sacrifice by the debtor

commensurate with that demanded of the creditors." *In re Khan*, 34 B.R. 574, 579 (W.D.KY.

1983).  Courts have held that indicia of bad faith typically include "fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other

bidders." *Cumberland Farms Diary, Inc. v. Abbotts Dairies of Penn., Inc. (In re Abbotts Diaries

of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter

Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983) (other citations omitted); *see also Kabro Assoc. of West

Islip, L.L.C. v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997)

(noting that the type of "misconduct that would destroy a [purchaser]'s good faith status at a judicial

sale involves fraud, collusion between the [purchaser] and other bidders or the trustee or an attempt

to take grossly unfair advantage of other bidders.").

29.     The Bidding Procedures were designed with the goal of producing a fair and transparent bidding process to allow the Debtors to attract the best offers for the Sale Assets. The Successful Bidder(s) and the Debtors will have negotiated at arm's-length and in good faith for the purchase of the Sale Assets, pursuant to a process providing for an Auction in certain circumstances. As such, the Debtors request that the ultimate purchaser of the applicable Sale Assets be entitled to the protections of section 363(m) of the Bankruptcy Code. *See, e.g., In re Clearwater Natural Resources, LP et al,* Case No. 09-70011 [Docket No. 906] (Bankr. E.D. Ky. 2009).

**C.     The Sale of the Sale Assets Free and Clear of Liens, Claims, Interests and Encumbrances Is Appropriate under Section 363(f) of the Bankruptcy Code**

30.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of all liens, claims, interests and encumbrances provided that one of the following conditions are met:

a.     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.     such entity consents;

c.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.     such interest is in bona fide dispute; or

e.     such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1) – (5).

31.     As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary for a debtor to meet one of the five conditions of section 363(f). *See Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code

section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided at least one of the subsections of Bankruptcy Code 363(f) is met).

32.     The Debtors anticipate that, whichever Sale Transaction they pursue, whether that be with the Stalking Horse Bidder or Successful Bidder selected after the Auction, or any combination thereof, such Sale Transaction(s) will satisfy one of the five requirements set forth under section 363(f) of the Bankruptcy Code, either because there are proceeds sufficient to cover such liens or interests, the affected parties consent to the Sale of the applicable Sale Assets or some other bases exist under section 363(f) of the Bankruptcy Code to warrant the sale of the applicable Sale Assets free and clear of such liens or interests.  Accordingly, the Debtors anticipate that one or more prongs of section 363(f) of the Bankruptcy Code will be satisfied with respect to parties that assert liens on or interests in the Sale Assets.

**D.     Assumption and Assignment of Executory Contracts and Unexpired Leases**

33.     Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease . . ."  11 U.S.C. § 365(a).

34.     Courts employ a business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease.  *See, e.g., In re Hurricane Elkhorn Coal Corp. II* 15 B.R. 987 (Bankr. W.D. Ky.  1981) (determining the business judgment rule to be the preferable standard for rejecting and assuming executory contracts and approving debtor's rejection of an executory supply contract under business judgment test).

35.     The proposed Sale Transaction(s) will provide Successful Bidders the opportunity to designate certain contracts for assumption and assignment in connection with the Sale Transaction.  Assumption of the proposed assumed contracts is a sound exercise of the Debtors' business judgment.  Assuming and assigning the proposed assumed contracts will permit the Debtors to attract the highest or otherwise best offer for the Sale Assets, by enabling the Debtors

to offer parties in interest with a combination of contracts that are integral to the ownership or operation of the Sale Assets that the Debtors seek to sell.

36.    Section 365(f) of the Bankruptcy Code requires, in part, that the assignee of any executory contract provide "adequate assurance of future performance . . . whether or not there has been a default in such contract."   11 U.S.C. § 365(f)(2).   Section 365(b), which codifies the requirements for assuming an executory contract, provides, in pertinent part that the debtor may only assume an executory contract if it:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure[s] [any defaults existing under the executory contract];
>
> (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract . . . for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

37.    While undefined by the Bankruptcy Code, adequate assurance is guided by "a practical, pragmatic construction based upon the facts and circumstances of each case." *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (quoting *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1995)); *see also In re Alipat, Inc.*, 36 B.R. 274, 276-77 (Bankr. E.D. Mo. 1984) (recognizing that the term adequate assurance "borrowed its critical language . . . from Section 2-609 of the Uniform Commercial Code" which "suggest[s] that adequate assurance is to be defined by commercial rather than legal standards . . . [and] factual considerations."). While no single standard governs every case, adequate assurance "falls below 'absolute guarantee'... and can mean 'a strong

likelihood'… or 'more probable than not'." *In re Settlement Facility Dow Corning Trust*, 592 Fed.Appx. 473 (6th Cir. 2015) (citations omitted).

38.     The Bidding Procedures specifically require any Qualified Bidders to provide financial and other information that would provide the counterparties with adequate assurance of future performance of the applicable obligations under any proposed assumed contracts included as part of a Qualified Bid.  Moreover, the Debtors will provide adequate assurance information to all counterparties to the proposed assumed contracts.  Finally, counterparties unsatisfied with the proposed adequate assurance of future performance provided to them will be able to lodge objections with respect thereto.

39.     Accordingly, the Debtors have satisfied the requirements of section 365 of the Bankruptcy Code with respect to the assumption and assignment of the proposed assumed contracts.

40.     In order to facilitate the assumption and assignment of the proposed assumed contracts, the Debtors respectfully request that the Court find that all anti-assignment provisions included in the proposed assumed contracts, including those proposed assumed contracts that have the effect of restricting or limiting assignment, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[4]

### REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

41.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Debtors seek a waiver of any stay of the effectiveness of the Sale Order(s).  Bankruptcy Rule 6004(h) provides that "[a]n

---

[4] Section 365(f)(1) provides in pertinent part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease. . ."  11 U.S.C. § 365(f)(1).  Further, section 365(f)(3) provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court order otherwise."

42.     As set forth above, the relief requested herein is necessary and appropriate to maximize the value of the Debtors' estates for the benefit of their economic stakeholders. Accordingly, the Debtors submit that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that each Rule applies.

## REQUEST FOR EXPEDITED HEARING

43.     For the reasons set forth herein, the Debtors believe that the Motion involves matters that require an expedited hearing and respectfully requests that the Court conduct such hearing on May 21, 2026. The Debtors do not believe that the shortening of notice or the shortening of time to object to this Motion will prejudice any creditor or party in interest.

## NO PRIOR REQUEST

44.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Bidding Procedures Order substantially in the form attached hereto as Exhibit 2 that establishes the bidding and sale procedures and notices for substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests, (ii) authorize the Debtors to enter into the Stalking Horse APA, (iii) set the Sale Hearing, and (iv) authorize and approve the assumption and assignment, and notices thereof, of certain executory contracts and unexpired leases.

## NOTICE

Notice is hereby given that the foregoing Motion will come on for a hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, Second Floor Courtroom, 100 East Vine Street, Lexington, Kentucky 40507, on May 21, 2026 at the hour of 9:00 a.m., or as soon thereafter as the parties may be heard.

Respectfully submitted,

GARTLAND THACKER DELCOTTO PLLC

/s/ _Dean A. Langdon_____
Dean A. Langdon, Esq. (KY Bar No. 40104)
Heather M. Thacker, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:  (859) 281-1179
dlangdon@gtdfirm.com
hthacker@gtdfirm.com
COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by electronic mail or first-class U.S. mail, postage prepaid, on May 18, 2026 on the Combined Master Service List dated April 3, 2026.

/s/ _Dean A. Langdon_____
COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION