UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

CASE NO. 26-60438

CLINTWOOD JOD, LLC *et al.*

CHAPTER 11

DEBTORS IN POSSESSION

JOINT ADMINISTRATION

## ORDER APPROVING THE SALE OF EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AND GRANTING RELATED RELIEF

Upon the motion of the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "***Debtors***"), seeking the entry of an order approving the sale (the "***Sale***") of the Debtors' equipment in which certain creditors hold a purchase money security interest lien (collectively, the "***Purchased Assets***") free and clear of liens, claims, encumbrances, and other interests, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Kentucky (the "***Sale Motion***")[1]; and the Court having reviewed the Motion; and upon this Court's prior Order, dated May 22, 2026 approving, among other things, the bidding procedures, as amended (collectively, the "***Bidding Procedures***") [Docket Nos. 278 and 315] (the "***Bidding Procedures Order***"); and it appearing that due and adequate notice of the Motion, the Bidding Procedures Order, and the auction conducted in connection therewith (the "***Auction***") having been given to all parties entitled thereto, and that no other or further notice need be given; and the Auction having been conducted on July 13 and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the  Sale Motion.

14 2026; and upon the conclusion of the Auction, Caterpillar Financial Services Corporation ("*CFSC*"), Align Equipment Finance LLC Series SL-A1 ("*Align*"), and Community Trust Bank, Inc. ("*CTB*") (or an assignee thereof) (each a "*Purchaser*") having been determined to have made the highest and best offer for the Purchased Assets more specifically set forth on each respective Purchaser's proof of claim [CFSC Proof of Claim No. 31-1 (the "*CFSC Assets*"); Align Proof of Claim No. 35-1 (the "*Align Assets*"); and CTB Proof of Claim Nos. 32, 33, and 34 (the "*CTB Assets*")][2] and the transactions contemplated therein as described in the Debtors' Final Report of Auction (the "*Auction Report*") [Docket No. 340] and by this Order (collectively, the "*Sale Transaction*"); and upon the Court hearing held on July 16, 2026 (the "*Sale Hearing*") to consider the relief requested in the Motion and to approve among other things the Sale of the Purchased Assets to the respective Purchasers (all as described more fully below); and upon the additional proffer of evidence at the Sale Hearing, if any; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      Bankruptcy Petitions.  On March 22, 2026 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "*Chapter 11 Cases*").

B.      Jurisdiction and Venue.  The Bankruptcy Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and the Motion in this District is proper under 28 U.S.C. §§

---

[2] For the avoidance of doubt, this order shall approve the sale of the CFSC Assets to CFSC; the Align Assets to Align and the CTB Assets to CTB.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

1408 and 1409.

C.      Statutory Predicates.  The statutory predicates for the relief requested in the Motion

are sections 105, 362 and 363  of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014,

and Local Rule 6004-1.

D.      Notice.  As evidenced by the certificates of service previously filed with the

Bankruptcy Court, proper, timely, adequate and sufficient notice of the Motion, the hearing on the

Bidding Procedures, the Auction, this Order and the Sale Hearing, have been provided in

accordance with sections 102(1) and 363  of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

9006 and 9007, and Local Rule 6004-1, and in compliance with the Bidding Procedures Order.

Such notice was good and sufficient and appropriate under the particular circumstances.  No other

or further notice of the Motion or this Order is necessary or shall be required.

E.      Opportunity to Object.  A reasonable opportunity to object or be heard regarding the

requested relief in the Motion has been afforded to all interested persons and entities.

F.      Title in the Purchased Assets.  The Purchased Assets constitute property of the

Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section

541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased

Assets.

G.      Business Justification.  The Debtors have demonstrated a sufficient basis and

compelling circumstances requiring them to enter into the Sale Transaction, and sell the Purchased

Assets.  Such action is an appropriate exercise of the Debtors' business judgment and in the best

interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not

limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased

Assets if a Sale is not consummated quickly and (ii) the Sale Transaction contemplated by this Order

3

constitutes the highest or otherwise best offer for the Purchased Assets; and entry of this Order and implementation of all provisions hereof is a necessary condition precedent to the Purchaser consummating the Sale to each Purchaser.

H.     Opportunity to Bid.  The Debtors and their professionals marketed the Purchased Assets appropriately and conducted the marketing and sale process (including the Auction) as set forth in the Motion in good faith, without collusion and in accordance with the Bidding Procedures Order.  The Auction process set forth in the Bidding Procedures Order and the Bidding Procedures was fair in substance and procedure and afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.     Highest or Otherwise Best Offer.  The total consideration provided by each Purchaser for their respective Purchased Assets is the highest or otherwise best offer for the Purchased Assets received by the Debtors.  At the Auction held on July 13 and 14, 2026, no higher or otherwise better offers for the Purchased Assets having been made, the Debtors (after consultation with the consultation parties) declared each Purchaser as the successful bidder for the respective Purchased Assets in accordance with the Bidding Procedures Order, which determination constitutes a valid and sound exercise of the Debtors' business judgment.

J.     Good Faith Purchaser.  The Sale Transaction has been negotiated by the Debtors and each Purchaser in good faith, at arm's length, and without collusion or fraud.  The terms and conditions of the Sale Transaction, including the total consideration to be realized by the Debtors pursuant to Sale Transaction, are fair and reasonable, and the Sale Transaction is in the best interest of the Debtors, their creditors, and their estates. Each Purchaser is a "good faith purchaser" entitled

to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale of the Purchased Assets that they are acquiring pursuant to the Sale Transaction.  Each Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.  Each Purchaser is not, and was not immediately prior to the Closing Date, an "affiliate" or "insider" of the Debtors as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or stockholder existed between Purchaser, on the one hand, and the Debtors, on the other hand, immediately prior to the Closing Date.

K.    Corporate Power and Authority.  Subject to entry of this Order, the Debtors have full corporate power and authority to consummate and complete the Sale Transaction and to perform all of their respective obligations in furtherance thereof, and the sale of the Purchased Assets has been duly and validly authorized by all corporate authority necessary to consummate the Sale Transaction.  No consents or approvals, other than the entry of this Order, are required by the Debtors to consummate the Sale Transaction.

L.    Free and Clear.  The sale of the respective Purchased Assets to each Purchaser will be, as of the Closing, legal, valid and effective transfers of such assets, and each such transfer shall, at Closing, vest each Purchaser with all right, title, and interest of the Debtors to the applicable Purchased Assets free and clear of all Liens and liabilities. Each Purchaser would not enter into the Sale Transaction to acquire the respective Purchased Assets if the sale of such Purchased Assets were not free and clear of all Liens and liabilities, or if Purchaser would, or in the future could, be liable for any such Liens or liability.  A sale of the Purchased Assets other than one free and clear of all Liens and liabilities would adversely impact the Debtors' estates and would yield substantially less value for the Debtors' estates, with less certainty than the Sale Transaction.  Therefore, the Sale of

the Purchased Assets contemplated by this Sale Order and the Sale Transaction is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

M.    Satisfaction of 363(f) Standards.  The Debtors may sell the Purchased Assets free and clear of all Liens, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Specifically, each first-priority lien holder has consented to the sale.

N.    No Successor Liability. Each Purchaser and its respective affiliates, predecessors, successors, assigns, members, partners, principals, directors, officers, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors.  The Transactions contemplated here do not amount to a consolidation, merger, or de facto merger of any Purchaser with the Debtors and/or the Debtors' estates, there is not substantial continuity between any Purchaser and any of the Debtors, there is no common identity between the Debtors and any Purchaser, there is no continuity of enterprise between the Debtors and any Purchaser, each Purchaser is not mere continuation of the Debtors or their estates, and each Purchaser does not constitute a successor to the Debtors or their estates. Each Purchaser and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall have no obligations with respect to any Liabilities of the Debtors including, without limitation, all "claims" (as defined in section 101(5) of the Bankruptcy Code), liens, liabilities, interests, rights and encumbrances, mortgages, restrictions, hypothecations, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, rights of offset, contract rights, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights,

exoneration rights, product liability claims, alter-ego claims, environmental rights and claims, labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations, decrees of any court or foreign or domestic governmental or quasi-governmental entity, charges or any kind or nature, debts arising in any way in connection with any agreements, acts or failures to act, reclamation rights and claims, obligation claims, demands, guaranties, option rights or claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date and whether imposed by agreement, understanding, law, rule, equity or otherwise arising on or prior to the Closing Date and upon consummation of the Sale Transaction, each Purchaser and its respective affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) will be released and discharged from any and all of the Debtors' claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, asserted or unasserted, fixed or contingent, relating to the Sale Transactions, and the sale of the Purchased Assets as set forth in this Order and with regards to the Sale Transaction. The Bankruptcy Court finds that each Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims, including those based upon "successor liability" theories.

O.      No Fraudulent Transfer. The Transactions are not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Debtors, and each Purchaser are

not and will not be entering into the Transactions fraudulently.

P.      Fair Consideration.  The consideration constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Sale Transaction represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Debtors' cases.  Approval of and the consummation of the Sale Transaction is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

Q.      Compliance with Bankruptcy Code.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale Transaction as of the Closing Date.

R.      Sale Transactions Not a *Sub Rosa* Plan.  The sale of the Purchased Assets outside of a plan of reorganization pursuant to Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.

S.      Best Interest. The Transactions contemplated by Sale Transaction are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      Relief Granted.  The relief requested in the Motion is hereby granted as set forth herein.

8

2.      Objections Overruled.  All objections and responses to the Motion, this Order or the relief granted herein (including all reservation of rights included therein) that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice, but only with respect to the Purchased Assets.

3.      Notice.  Notice of the Motion, the Sale Transaction, the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, and 9007 and Local Rule 6004-2.

4.      Approval.  The Sale Transaction is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtors are hereby authorized and empowered and directed to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Sale Transaction, including non-substantial modifications to Sale Transaction.

5.      Good Faith Purchaser.  Each Purchaser is a good faith purchaser of the applicable Purchased Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale or transfer, under Sale Transaction or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale or transfer shall be governed in all respects by the original provisions of this Order and the Sale Transaction, as the case may be.

6.      Section 363(n) of the Bankruptcy Code.  The Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

7.      Authorization of Performance by the Debtors.  The Debtors are authorized to fully perform under, consummate, and implement the terms of this Order together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of this Order and the Sale Transaction, including, without limitation, bills of sale, and to take all further actions as may reasonably be requested by any Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to such Purchaser(s) or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations without any further corporate action or orders of the Bankruptcy Court.

8.      The Debtors are authorized and empowered to file with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale Transaction any related agreements and this Order.

9.      Valid Transfer.  Effective as of the Closing, the sale of the Purchased Assets by the Debtors to each Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person, and vests each Purchaser, as applicable, with all right, title, and interest of the Debtors in and to the applicable Purchased Assets, free and clear of all Liens, pursuant to section 363(f) of the Bankruptcy Code.

10.     Free and Clear.  Upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to

sell the applicable Purchased Assets to each applicable Purchaser. The sale of the applicable Purchased Assets to each applicable Purchaser vests such Purchaser with all right, title and interest of the Debtors to such Purchased Assets free and clear of any and all Liens and any and all other liabilities of any kind or nature whatsoever, whether contingent, unliquidated, unmatured, imposed by agreement, understanding, law, equity, or otherwise. The Motion shall be deemed to provide sufficient notice as to the sale of the Purchased Assets free and clear of all Liens and liabilities in accordance with Local Rule 6004-2. Following the Closing, no holder of any Lien on the Purchased Assets may interfere with Purchaser's use and enjoyment of the applicable Purchased Assets based on or related to such Lien, or any actions that the Debtors may take or fail to take in their Chapter 11 Cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale or the other Transactions.

11.    The term "Liens" shall include, among other things, any claim, interest, lien or encumbrance and, without limitation: all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, whether contingent, unliquidated, unmatured, or otherwise, in respect of the Debtors or any property of the Debtors, including, without limitation, the following: (1) any employment or labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of any Debtor; (4) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974), as amended (b) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, as amended, (c) Title VII of

the Civil Rights Act of 1964, 42 U.S.C. 2000e §§ *et seq.*, as amended, (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, as amended, (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, as amended, (f) the Worker Adjustment and Retraining Act of 1988, 28 U.S.C. §§ 2101 *et seq.*, (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, as amended, (h) the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 §§ *et seq.*, as amended, (i) the Black Lung Benefits Act and the Kentucky Worker's Compensation Act, §§ 342 *et seq*, (j) the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq.*, (k) the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, as amended, (l) the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701 *et seq.*, (m) state discrimination laws, (n) state unemployment compensation laws or any other similar state laws, or (o) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability, including any theories on product liability grounds; and (8) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other state statute.

12.     Effective on the Closing Date, all persons and entities, to the extent allowed by law, are forever prohibited, estopped and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative,

arbitral or other proceeding against any Purchaser, their successors and assigns, or the Purchased Assets, based upon or with respect to any interest, claim, lien, encumbrance, or liability of which the sale of the Purchased Assets is free and clear under the terms of this Order.

13. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens, shall be self-executing, and the Debtors and each Purchaser shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

14. Direction to Creditors. On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens in the Purchased Assets, if any, as such Liens may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the Purchased Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, then with regard to the Purchased Assets, (a) the Debtors and/or each Purchaser are authorized to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Debtors and/or each Purchaser, are authorized to file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

15. <u>Direction to Government Agencies</u>. Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by this Order. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the Purchased Assets from their records, official and otherwise.

16. <u>Direction to Surrender Possession or Control; Relief from Automatic Stay</u>. All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the applicable Purchased Assets to the applicable Purchaser on the Closing Date or at such time thereafter as such Purchaser may request. The automatic stay provided by 11 U.S.C. § 362 is hereby modified to permit the Debtors to comply with the terms of this Order. Subject to subsequent Orders regarding the disposition of substantially all of the Debtors' assets, the Debtors will take reasonable actions to assist each Purchaser with the collection and transfer of their respective Purchased Assets (including, but not limited to, disclosing the location of the Purchased Assets; and preventing vandalism or theft of the Purchased Assets. Each Purchaser and their respective agents (including, but not limited to, contractors, transporters, and riggers) shall have authority to enter the premises where the Purchased Assets are located so long as the Debtors retain the right to grant such authority.

17. <u>Transfer of Title and Interests</u>. All of the Debtors' interests in the Purchased Assets

to be acquired by Purchaser as set forth herein, as of the Closing Date and upon the occurrence of the Closing, shall be deemed transferred to and vested in each Purchaser as applicable, pursuant to the terms of the Sale Transaction. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general conveyance and transfer of the Purchased Assets to each Purchaser as applicable transferring indefeasible title and interest in the Purchased Assets.

18.    Fair Consideration.  The consideration to be provided by each Purchaser to the Debtors for the purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration made by each Purchaser as a credit bid permitted under Section 363(k) and otherwise, and the Sale Transaction shall not constitute a fraudulent transfer or fraudulent conveyance under, the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

19.    No Successor Liability.  Each Purchaser and its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals, and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Chapter 11 Cases under any theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged, or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to,

15

any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability. The transfer of the Purchased Assets to Purchaser shall not result in any Purchaser or their respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals, and shareholders (or equivalent), or the Purchased Assets, (i) having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens, or (iii) having any liability or responsibility to the Debtors.

20. <u>Injunction</u>. All persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, equity holders, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors, holding any liabilities or Liens of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business on or prior to the Closing Date, the Transactions, or the transfer of the Purchased Assets to Purchaser shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind relating to the Debtors, the Purchased Assets, the operation of the Debtors'

business on or prior to the Closing Date, the Transactions, or the transfer of the Purchased Assets

of Purchaser, directly or indirectly, against any Purchaser or any of their affiliates, predecessors,

successors, or assigns or any of their (including their affiliates, predecessors, successors, or assigns)

respective current and former members, officers, directors, managed funds, investment advisors,

attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial

advisors and representatives (each of the foregoing in its individual capacity), their property or the

Purchased Assets.   Actions that are barred hereby include, without limitation: (i) the

commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment,

collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or

enforcement of any lien, claim, interest, or encumbrance, (iv) the assertion of any right of setoff,

subrogation or recoupment of any kind, (v) the commencement or continuation of any action that

does not comply with, or is inconsistent with, the provisions of this Order, any actions contemplated

or taken in respect hereof, and (vi) the revocation, termination or failure or refusal to renew any

license, permit, registration, or governmental authorization or approval to operate any of the

Purchased Assets or conduct the businesses associated with such Purchased Assets. Following the

Closing Date, no holder of a Lien on, in or against the Purchased Assets shall interfere with

Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien,

or any actions that the Debtors may take in the Debtors' cases.

21.    Purchaser has not assumed and is not otherwise obligated for any of the Debtors'

liabilities. Consequently, all persons, Governmental Units (as defined in section 101(27) of the

Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the

Debtors are hereby forever prohibited, estopped and permanently enjoined from taking any action

against Purchaser, or the Purchased Assets, including asserting any setoff, right of subrogation or

recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors. All persons holding or asserting any Lien on the Purchased Assets are hereby forever prohibited, estopped and permanently enjoined from asserting or prosecuting such Liens or cause of action against Purchaser, or the Purchased Assets for any liability associated with the Excluded Assets.

22.    No Bulk Sales; No Brokers.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the Sale Transaction. Except as provided by the Order Approving the Employment of BDO Group, LLC,  n o brokers were involved in consummating the Sale or the Sale Transaction, and no brokers' commissions are due to any person or entity in connection with the Sale or the Sale Transaction.  Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or the Sale Transactions based upon any arrangement made by or on behalf of the Debtors.

23.    Release and Discharge.  Each Purchaser their affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors in connection with this Sale Transaction.

24.    Binding Order.  This Order and Sale Transaction shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors, Purchaser, and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release

any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. The Sale Transactions shall not be subject to rejection or avoidance under any circumstances. This Order and the Sale Transaction shall inure to the benefit of the Debtors, their estates, their creditors, Purchaser, and their respective successors and assigns

25.     No Stay of Order.  The provisions of Bankruptcy Rules 6004 and 6006 staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

26.     Retention of Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and Sale Transaction, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, with regards to the Purchased Assets; (b) decide any disputes concerning this Order, or the rights and duties of the parties hereunder or thereunder or any issues relating to this Order and the Purchased Assets including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens and (c) enforce the injunctions set forth herein.

27.     To the extent provided by Section 525 of the Bankruptcy Code, no Governmental Unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases.

28.     Credit-Bid Findings.  The Court finds that CFSC, Align, and CTB are authorized to credit bid under Section 363(k); CFSC, Align, and CTB,  each hold an allowed and valid secured claim for credit-bid purposes on each and every piece of equipment listed in their respective proof

of claim.

29.     CFSC.   Notwithstanding anything to the contrary set forth in this Order, the equipment subject to the lien of CFSC shall be delivered, sold, or otherwise transferred free and clear of all Liens, interests, and liabilities (including, but not limited to, those claimed or may be claimed by Square Resources US LLC and its affiliates, Continental Heritage Insurance Company and its affiliates, and Richmond Hill Investment Co. and its affiliates) other than CFSC's own security interest upon execution of a bill of sale executed by CFSC and Debtors, which Debtors are authorized to execute.  Upon execution of the bill of sale, CFSC taking possession and control of its respective Purchased Assets, and without further notice or order, CFSC is authorized to amend its proofs of claim filed in these bankruptcy cases to reflect the balance of the CFSC debts that remains after application of the $1,500,000.00 credit bid made by CFSC. For the avoidance of doubt, the $1,500,000.00 credit bid is deemed made and accepted upon execution of a bill of sale and nothing herein shall release, discharge, impair, or otherwise affect any liability of any guarantor, co-obligor, indemnitor, insurer, or other nondebtor person or entity, or any lien or security interest of CFSC in property other than the Purchased Assets, except to the extent CFSC expressly agrees in a separate writing.

30.     Align.   Notwithstanding anything to the contrary set forth in this Order, the equipment subject to the lien of Align shall be delivered, sold, or otherwise transferred free and clear of all Liens, interests, and liabilities (including, but not limited to, those claimed or may be claimed by Square Resources US LLC and its affiliates, Continental Heritage Insurance Company and its affiliates, and Richmond Hill Investment Co. and its affiliates) other than Align's own security interest upon execution of a bill of sale executed by Align and Debtor.  Upon execution of the bill of sale, Align taking possession and control of its respective Purchased Assets, and

without further notice or order, Align is authorized to amend its proofs of claim filed in these bankruptcy cases to reflect the balance of the Align debts that remains after application of the $7,000,000.00 credit bid made by Align. For the avoidance of doubt, the $7,000,000.00 credit bid is deemed made and accepted upon execution of a bill of sale and nothing herein shall release, discharge, impair, or otherwise affect any liability of any guarantor, co-obligor, indemnitor, insurer, or other nondebtor person or entity, or any lien or security interest of Align in property other than the Purchased Assets, except to the extent Align expressly agrees in a separate writing.

31.     CTB.  Notwithstanding anything to the contrary set forth in this Order, the equipment subject to the lien of CTB shall be delivered, sold, or otherwise transferred free and clear of all Liens, interests, and liabilities (including, but not limited to, those claimed or may be claimed by Square Resources US LLC and its affiliates, Continental Heritage Insurance Company and its affiliates, and Richmond Hill Investment Co. and its affiliates) other than CTB's own security interest upon execution of a bill of sale executed by CTB and Debtor.  Upon execution of the bill of sale, CTB taking possession and control of its respective Purchased Assets, and without further notice or order, CTB is authorized to amend its proofs of claim filed in these bankruptcy cases to reflect the balance of the CTB debts that remains after application of the $9,670,335.00 credit bid made by CTB. For the avoidance of doubt, the $9,670,335.00 credit bid is deemed made and accepted upon execution of a bill of sale and nothing herein shall release, discharge, impair, or otherwise affect any liability of any guarantor, co-obligor, indemnitor, insurer, or other nondebtor person or entity, or any lien or security interest of CTB in property other than the Purchased Assets, except to the extent CTB expressly agrees in a separate writing

32.     CFSC, Align, and CTB.  Notwithstanding anything to the contrary set forth in this Order, to the extent any of the CFSC, Align, and/or CTB Assets are unable to be located and/or

are no longer in existence for whatever reason including, but not limited to, casualty loss, (i) CFSC, Align, and/or CTB's purchase money security interest therein shall have deemed to attach, and shall attach, to the proceeds to which the Debtors are entitled and/or may be received by the Debtors (the "Proceeds") in the same priority as were in existence as of the Petition Date and (ii) the Proceeds received and/or held by the Debtors shall be held in trust for the benefit of CFSC, Align, and/or CTB and promptly paid to CFSC, Align, and/or CTB upon receipt thereof.

33.     Governing Terms.  To the extent this Order is inconsistent with any prior Order or pleading in these Chapter 11 Cases, or the terms of this Order shall govern.

Tendered by:

GARTLAND THACKER DELCOTTO PLLC

/s/  *Dean A. Langdon*
Dean A. Langdon, Esq.
Heather M. Thacker, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:  (859) 281-1179
dlangdon@gtdfirm.com
hthacker@gtdfirm.com
COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

22

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, July 24, 2026**
**(dll)**